**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

In re:  CARRIE D. LAWSON                              BK No: 13-10752
       Debtor                                                  Chapter 13

---

SAUER INCORPORATED d/b/a                              A.P. No. 13-01037
SAUER SOUTHEAST,
       Plaintiff
v.
CARRIE D. LAWSON,
       Defendant.

---

## DECISION AND ORDER

The Debtor-Defendant Carrie D. Lawson moves to dismiss this adversary proceeding in which Plaintiff Sauer Incorporated seeks a determination that debt owed by the Debtor is nondischargeable pursuant to Bankruptcy Code § 523(a)(2)(A).[1] The linchpin of this case is whether in this circuit a debt incurred as a result of a debtor's "actual fraud" in the absence of any misrepresentation by the debtor falls within the scope of this nondischarge provision. Sauer alleges that the Debtor colluded with her father and knowingly received money through a fraudulent transfer, thereby incurring a debt to Sauer with actual fraudulent intent to hinder and delay Sauer from collecting money owed by the Debtor's father. This Court is duty-bound to apply the law enacted by Congress as interpreted by the United States Supreme Court and the United States Court of Appeals for the First Circuit. Based on that precedent, the Court concludes that in this circuit a misrepresentation by a debtor to a creditor is an essential element of establishing a basis for the nondischarge of a debt under § 523(a)(2)(A). Consequently, while

---

[1] Unless otherwise indicated, all references to the "Bankruptcy Code" or to specific statutory sections shall refer to the applicable sections of the United States Code, 11 U.S.C. § 101 *et seq*.

the outcome may seem harsh, the Court is constrained to hold that Sauer has failed to establish that the debt owed by the Debtor is nondischargeable under this provision.

### I. JURISDICTION

The Court has jurisdiction over this matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I).

### II. STANDARD OF REVIEW

The Debtor moves to dismiss Sauer's complaint on the basis that it fails to state a claim upon which relief can be granted. *See* Fed. R. Bankr. P. 7012(b) (incorporating Fed. R. Civ. P. 12(b)(6)).[2] In considering the motion to dismiss, the Court must accept as true the facts alleged in the complaint, construe all reasonable inferences in favor of Sauer, and determine whether under those facts and inferences Sauer would be entitled to the relief it seeks. *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

### III. FACTS ALLEGED IN THE COMPLAINT

In January 2007 Sauer filed a civil action in the Rhode Island Superior Court asserting claims including fraud against the Debtor's father, James Lawson. Complaint ¶ 4. Thereafter, in February 2010 Sauer obtained a judgment against Mr. Lawson in the amount of approximately $168,000. *Id*. ¶ 5. Immediately following entry of the judgment, Mr. Lawson transferred approximately $100,000 to Commercial Construction M&C, LLC ("CCMC"), an entity formed by the Debtor but controlled by Mr. Lawson. *Id*. ¶ 6. From February 2010 through early 2011, the Debtor transferred $80,000 of these funds from CCMC to herself. *Id*. ¶ 7.

In March 2011 Mr. Lawson filed a Chapter 13 petition in this Court, and in June 2011 Sauer initiated an adversary proceeding objecting to the discharge of Mr. Lawson's debt to

---

[2] Sauer filed its Complaint Objecting to Dischargeability of Debt on June 6, 2013 (Doc. #1), and a First Amended Complaint Objecting to Dischargeability of Debt on July 23, 2013 (Doc. # 14).

Sauer. *Id*. ¶¶ 8, 9. Subsequently, in August 2011 the Superior Court found Mr. Lawson's post-judgment transfer to CCMC to be fraudulent within the scope of the Rhode Island Uniform Fraudulent Transfers Act, R.I. Gen. Laws § 6-16-1 et seq. ("UFTA"), and issued an execution against CCMC in the amount of the transfer, approximately $100,000. *Id*. ¶ 10. In September 2011 this Court entered a default judgment against Mr. Lawson in Sauer's adversary proceeding, declaring Mr. Lawson's debt to Sauer nondischargeable. *Id*. ¶ 11.

The Superior Court action against Mr. Lawson proceeded, and in March 2013 that court ruled the transfers from CCMC to the Debtor to be fraudulent under the UFTA and issued an execution against the Debtor in the amount of the $80,000 she transferred from CCMC to herself.[3] *Id*. ¶ 12. In March 2013 the Debtor filed a Chapter 13 petition in this Court, and in June 2013 Sauer initiated the instant adversary proceeding objecting to the discharge of the Debtor's debt to Sauer.

Sauer alleges it "has traced portions of the original Judgment amount (awarded based upon fraud) to CCMC (an insider company owned by [the Debtor] and controlled by [Mr. Lawson]), then subsequently transferred to [the Debtor] directly (an insider as daughter to [Mr. Lawson] and owner of CCMC)." *Id*. ¶ 13. The complaint further alleges that the Debtor "incurred her debt to Sauer through actual fraud by . . . knowingly receiving the fraudulent transfer . . . ." *Id*. ¶ 14. Sauer asserts that as a result of the "continued attempts to conceal and dispose of monies owed to Sauer through fraudulent transfers under the UFTA, Sauer has

---

[3] The UFTA enables a creditor to obtain an "attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable statutes and rules of procedure." R.I. Gen. Laws § 6-16-7(a)(2). Sauer moved for issuance of an execution and attachment against the Debtor, and the Superior Court ordered an execution to issue against the Debtor and a writ to issue attaching the Debtor's bank accounts, both in the amount of $80,000. *See* Sauer's Memorandum in Support of Opposition to Debtor's Motion to Dismiss at 3 and <u>Exhibit 4</u> thereto.

suffered, and continues to suffer, severe and substantial damages." *Id.* ¶ 15. Sauer prays the debt to Sauer owed by the Debtor be declared nondischargeable pursuant to § 523(a)(2)(A).[4]

### IV.    THE PARTIES' ARGUMENTS

The Debtor first argues in her motion to dismiss (Doc. #15) that because the complaint alleges fraud it must meet the heightened pleading standard of Fed. R. Civ. P. 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Moreover, the Debtor contends that a plaintiff must plead "the who, what, where, and when of the allegedly false or fraudulent representation," citing *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004). Sauer, the Debtor argues, has failed to do so. This goes to the heart of the question presented by Sauer's complaint and the Debtor's motion; the complaint does not allege a false representation by the Debtor in connection with the incurrence of the debt. Sauer, while conceding that, nonetheless argues that the complaint should not be dismissed because a broader category of fraud is encompassed by the term "actual fraud" used in § 523(a)(2)(A).

The Debtor correctly points out that First Circuit case law regarding the fraud exception to discharge is seemingly well established. For a debt to be nondischargeable under § 523(a)(2)(A), "a creditor must show that (1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; (2) the debtor intended to deceive; (3) the debtor intended to induce the creditor to rely upon the false statement; (4) the creditor actually relied upon the misrepresentation; (5) the creditor's reliance was justifiable; and (6) the reliance on the

---

[4] Sauer also objected to the discharge of the debt pursuant to Bankruptcy Code § 523(a)(6). The Court previously dismissed that claim because § 1328(a) does not except from discharge in a Chapter 13 case debts of the kind set forth in § 523(a)(6). *See Sauer Inc. v. Lawson (In re Lawson)*, A.P. No. 13-01037, Doc. #23 (Bankr. D.R.I. Oct. 23, 2013).

4

false statement caused damage." *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir. 2001) (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997)). The complaint fails to allege those elements – in particular it lacks an allegation of misrepresentation – and therefore, the Debtor maintains, the complaint must be dismissed. Indeed, even Sauer concedes that the complaint does not satisfy the *Spigel/Palmacci* criteria. *See* Sauer's Memorandum in Support of Opposition to Debtor's Motion to Dismiss at 4-5 (Doc. #16) ("Objection").

Instead, Sauer argues that the *Spigel/Palmacci* test should not be the end of the analysis, that the fraud exception of § 523(a)(2)(A) is not (or should not be) limited to cases of misrepresentation, and that UFTA violations fall within § 523(a)(2)(A)'s "actual fraud" component. To advance this argument, Sauer relies upon the decision of the United States Court of Appeals for the Seventh Circuit in *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000), and its progeny, including the decisions of two bankruptcy appellate panels that have adopted this viewpoint. *See Diamond v. Vickery (In re Vickery)*, 488 B.R. 680 (10th Cir. B.A.P. 2013); *Mellon Bank v. Vitanovich (In re Vitanovich)*, 259 B.R. 873 (6th Cir. B.A.P. 2001). This interpretation of the term "actual fraud," Sauer reasons, is consistent with existing First Circuit precedent and should be applied to the circumstances of this proceeding because the Debtor allegedly engaged in "actual fraud" by knowingly colluding with her father to effectuate the fraudulent transfers to her with the intent to defeat Sauer's rights as a creditor.

To counter this argument, the Debtor emphasizes that the First Circuit has taken no position on the validity of *McClellan's* analysis of the term "actual fraud" in this statutory provision. Furthermore, the Debtor relies upon the conclusions of two Massachusetts bankruptcy judges, in separate cases, that *McClellan* is inconsistent not only with First Circuit precedent but also with Supreme Court precedent as enunciated in *Field v. Mans*, 516 U.S. 59 (1995). *See*

5

*Morrissette v. Sorbera (In re Sorbera)*, 483 B.R. 580 (Bankr. D. Mass. 2012) (Bailey, J.); *Blacksmith Investments, LLC v. Woodford (In re Woodford)*, 403 B.R. 177 (Bankr. D. Mass. 2009) (Feeney, J.).

V.  **DISCUSSION**

In relevant part § 523(a)(2)(A) declares nondischargeable a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud . . . ." Reading the allegations in the complaint, drawing all reasonable inferences in favor of Sauer, and reviewing § 523(a)(2)(A), it would be easy to view the Debtor's alleged conduct as falling within the ambit of this provision. Certainly, the alleged conduct evidences a debt to Sauer arising from money obtained by fraudulent means. However, the term "actual fraud" is not defined in the Bankruptcy Code, and in its historical context and under First Circuit case law the meaning ascribed to this term is not broad enough to encompass the Debtor's actions.

A.  *McClellan*

In *McClellan*, the Seventh Circuit reviewed de novo the dismissal of a claim under § 523(a)(2)(A) for failure to state a claim. The facts of that case, which Sauer argues are "virtually identical" to those in the case at hand, are as follows.

> In 1989 McClellan, the creditor sold his business assets, consisting of ice-making machinery, to the debtor's brother for $200,000, payable in installments. McClellan retained, but did not perfect, a security interest in the machinery. The brother defaulted, owing McClellan more than $100,000. McClellan sued the brother in an Illinois state court, seeking among other things an injunction against the brother's transferring the machinery. With the suit pending, the brother "sold" the machinery to his sister, the debtor. The bill of sale recites the price as $10, and there is no reason to believe that it was more; we may assume therefore that it was a gratuitous transfer. The sister knew about the suit and in accepting the transfer of the machinery was colluding with her brother to

6

> thwart McClellan's collection of the debt that her brother owed him. She turned around and sold the machinery for $160,000-and she's not telling anyone what has happened to that money.
>
> The sale took place in 1994 and the following year McClellan added the sister as a defendant in his state court action, claiming that her brother's transfer of the machinery to her had been a fraudulent conveyance. Two years later, with the state court suit still pending, the sister filed for bankruptcy under Chapter 7. Fearing lest her debt to him be discharged at the conclusion of the bankruptcy proceeding, McClellan filed an adversary proceeding against her seeking to recover the debt that he alleged she owed him as the recipient of a fraudulent transfer of the assets that secured her brother's debt.

*McClellan*, 217 F.3d at 892.

The bankruptcy court in *McClellan* dismissed the complaint, ruling that the debt was dischargeable, and the district court affirmed, stating that "the Supreme Court [in *Field*] recently scoffed at the idea that a debt could be nondischargeable under the fraud exception of § 523(a)(2)(A) without a showing of material misrepresentation and reliance on the statement." *Id*. The Seventh Circuit disagreed, stating that "*Field* has nothing to do with this case," because in that case the fraud "took the form of misrepresentation, and the only issue was the nature of the reliance that a plaintiff must show to prove fraud in such a case." *Id*. The question it was presented with, the Seventh Circuit explained, was whether misrepresentation is the only type of fraud that comes within the purview of this exception for "actual fraud." It concluded that nothing in *Field* suggests that misrepresentation is the only type of fraud that can give rise to a debt that is not dischargeable under § 523(a)(2)(A) and observed that while numerous cases have assumed that fraud and misrepresentation are synonymous (like *Field*) those cases all involved fraud alleged based upon misrepresentation. *Id*. In that category, the Seventh Circuit placed the opinions of the First Circuit, including *Spigel*, 260 F.3d 27, *Sanford Inst. for Savings v. Gallo*, 156 F.3d 71 (1st Cir. 1998), and *Palmacci*, 121 F.3d 781. No other court of appeals had

7

addressed the precise issue before it, the *McClellan* court determined. Ultimately, the Seventh Circuit was persuaded that "by distinguishing between 'a false representation' and 'actual fraud,' the statute makes clear that actual fraud is broader than misrepresentation," and reversed the district court's ruling. *McClellan*, 217 F.3d at 893.

Sauer draws upon the concerns expressed in *McClellan* that a narrower interpretation of "actual fraud" would enable a dishonest debtor to abuse bankruptcy law to shield fraudulent conduct and would permit the Debtor in this proceeding before the Court to "turn bankruptcy law into an engine for fraud." *Id*. This broader view adopted by the Seventh Circuit would not apply to an innocent debtor who accepts a fraudulent transfer without the knowledge of the fraudulent character of the transaction or the intent to defraud. *Id*. at 894-95. Sauer alleges that the Debtor, like the debtor in *McClellan*, personally made and accepted the fraudulent transfer from CCMC to herself with the knowledge and intent to thwart Sauer's collection of its debt from Mr. Lawson and CCMC.[5]

### B.  The First Circuit on *McClellan*

The First Circuit only once has commented on *McClellan* and the term "actual fraud." In *Spigel*, the court first reiterated the accepted rule in this circuit with regard to § 523(a)(2)(A): "[W]e have said that the statutory language does not remotely suggest that nondischargeability attaches to any claim other than one which arises as a direct result of the debtor's misrepresentation or malice," and that in order to establish a debt is not dischargeable under § 523(a)(2)(A) a creditor must show the debtor made a false representation, along with the other elements detailed above. *Spigel*, 260 F.3d at 32. *Spigel* stresses that the statutory language and the legislative history require that the claim of the creditor arise as a "direct result" of the

---

[5] Sauer argues that the Debtor's knowledge and intent "is apparent from her participation in her father's [S]uperior [C]ourt action through her provision of affidavits and sworn testimony." Objection at 6, n.1.

8

debtor's fraud. *Id*. In a footnote, the First Circuit acknowledged that the Seventh Circuit had adopted a broader interpretation of "actual fraud":

> We note that the Seventh Circuit has recently called into question whether the *Palmacci* test should properly be considered the exclusive test to determine nondischargeability under § 523(a)(2)(A). In *McClellan v. Cantrell,* 217 F.3d 890 (7th Cir. 2000), that court noted that *Palmacci* and similar cases have adopted a test that focuses solely upon false representations as the total universe of fraud under § 523(a)(2)(A), in large part because false representations were the only fraud before those courts. *Id.* at 892. § 523(a)(2)(A), however, explicitly lists both "actual fraud" and "false representations" as grounds for denying a discharge, a distinction in the statutory language that the *McClellan* court relied upon to hold that "actual fraud" encompasses more than misrepresentations. *Id.* at 892-93; *see also Mellon Bank N.A. v. Vitanovich,* 259 B.R. 873, 876 (6th Cir. BAP 2001) (adopting *McClellan*'s definition of actual fraud to evaluate nondischargeability of a debt created by a check kiting scheme). Though there are differences between *McClellan* and *Palmacci* – the most significant of which concerns whether reliance is required – we do not decide whether we would adopt the Seventh Circuit's reasoning. *McClellan* is consistent with our existing precedent in that it also requires a direct link between the alleged fraud and the creation of the debt. *McClellan,* 217 F.3d at 894-95 (noting that the actual fraud denied discharge under § 523(a)(2)(A), as opposed to constructive fraud, requires a showing that the fraud created the debt); *see also, e.g., Century 21 Balfour Real Estate,* 16 F.3d at 10.

*Id*. at 32, n.7.

This dicta might be viewed as an invitation for a lower court under the right set of facts to adopt the broader construction of § 523(a)(2)(A) enunciated in *McClellan*. However, this Court concurs with Judges Feeney and Bailey of the Bankruptcy Court for the District of Massachusetts and declines to adopt such an interpretation. Based on *Field* and First Circuit precedent, *Spigel* should not be regarded as such an invitation without more clear direction from the First Circuit.

C. <u>The Massachusetts Bankruptcy Court Decisions</u>

In *Blacksmith Investments, LLC v. Woodford (In re Woodford)*, 403 B.R. 177 (Bankr. D. Mass. 2009), the plaintiff relied solely on § 523(a)(2)(A) as grounds for seeking nondischargeability of the debtor's debt. The plaintiff had no evidence to support the elements of the *Spigel*/*Palmacci* test but instead urged the court to adopt the holding of *McClellan* and its progeny. Judge Feeney concluded that the *Spigel*/*Palmacci* test remained the governing law in the First Circuit, finding that *Spigel* neither "adopted" nor "unequivocally rejected" *McClellan*. *See Woodford*, 403 B.R. at 184-87. "In the absence of a clear indication from the First Circuit, this Court lacks the sanguinity of the Seventh Circuit in side stepping the decision of the Supreme Court in *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)." *Id.* at 187.

While the principal issue in *Field* was the reliance a creditor must show under § 523(a)(2)(A), the Supreme Court delved into the historical meaning ascribed to the term "actual fraud" when the Bankruptcy Code was enacted in 1978. Its research revealed that "actual fraud" holds an acquired meaning as a term of art, and that Congress's use of that term in this provision embraced those elements that the common law already had defined the term to include. *See Field*, 516 U.S. at 69 ("It is . . . well established that where Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms."). The "most widely accepted distillation of the common law of torts," and therefore of the concept of "actual fraud," the Supreme Court instructed, was the Restatement (Second) of Torts (1976). *Id.* at 70. Section 523(a)(2)(A) is unchanged from its 1978 enactment, and the meaning of the term "actual fraud" in the statute likewise remains unchanged.

10

That common law formulation of "actual fraud" is the test enunciated by the First Circuit in *Palmacci* and *Spigel* requiring a misrepresentation. Rejecting *McClellan's* interpretation of "actual fraud," Judge Feeney held that the fraudulent transfer in *Woodford* did not fit within the parameters of common law "actual fraud" as articulated by the Supreme Court in *Field*. *Woodford*, 403 B.R. at 188. Due to the lack of a clear directive from the First Circuit, Judge Feeney refused to find that the creditor "sustained its burden of establishing all the common law elements required by decisions in this circuit." *Id*. at 189.[6]

More recently Judge Bailey addressed this same issue in *Morrissette v. Sorbera (In re Sorbera)*, 483 B.R. 580 (Bankr. D. Mass. 2012), in which a charge of "actual fraud" but no allegation of misrepresentation was lodged against the debtor. After outlining the *Spigel/Palmacci* test for nondischargeability under § 523(a)(2)(A), Judge Bailey agreed with the rationale in *Woodford* and he too declined to adopt the broader interpretation of "actual fraud" espoused in *McClellan*. "Judge Feeney held that *McClellan's* reading of actual fraud was inconsistent with the Supreme Court's interpretation of that term and, accordingly, limited it to the definition provided by the First Circuit in *Spigel*." *Sorbera*, 483 B.R. at 586. Judge Bailey emphasized the two compelling reasons discussed in *Woodford* as the basis for his rejecting the expansive view of *McClellan*:

> First, in *Field v. Mans*, the Supreme Court explained that actual fraud under § 523(a)(2)(A) carries the common law elements of fraudulent misrepresentation found in the Restatement (Second) of Torts (1976). . . . Second, the bankruptcy court is "bound by the elements comprising the common law formulation of 'actual fraud' enunciated by the [First Circuit] in *Spigel*," which include evidence

---

[6] Shortly after *Woodford*, Judge Feeney was presented with another case involving § 523(a)(2)(A) and the issue of "actual fraud." *See Bauer v. Colokathis (In re Colokathis)*, 417 B.R. 150 (Bankr. D. Mass. 2009). In *Colokathis*, Judge Feeney determined that the Chapter 7 debtor's debt was not dischargeable pursuant to §§ 523(a)(4) and 523(a)(6), but she also observed that the debtor's conduct (theft of the plaintiff's identity, among other things) "would satisfy the definition of actual fraud under 11 U.S.C. § 523(a)(2)(A) adopted by [*McClellan*]." *Id*. at 161. Unfortunately for Sauer, whose claim is asserted *only* under § 523(a)(2)(A), the Court does not have the luxury of finding nondischargeability under another subsection of § 523(a).

11

> of a misrepresentation. . . . I agree that for these two reasons, actual fraud under § 523(a)(2)(A) is limited to the standard set forth in *Spigel*.

*Id*.

### D. The Sauer Debt and its Dischargeability

The Court is persuaded by the reasoning in *Woodford* and *Sorbera*. The First Circuit has directed that exceptions to discharge must be narrowly construed and that a creditor bears the burden to show that its claim comes squarely within an exception enumerated in the Bankruptcy Code. *See Spigel*, 260 F.3d at 32. Sauer has not met that burden. The Debtor's actions, lacking a false representation, do not come squarely with the parameters of "actual fraud" under § 523(a)(2)(A) as currently construed by the First Circuit.

In addition to the reasons identified in *Woodford,* in this Court's opinion there is yet another compelling reason to adhere to the First Circuit requirement of a misrepresentation to establish a nondischargeability claim under § 523(a)(2)(A), one rooted in the distinctions between the discharge provisions under Chapter 7 and Chapter 13. This case is, after all, a Chapter 13 case in which the Bankruptcy Code provides a broader discharge than that available in a Chapter 7 case. *See United States Aid Funds v. Espinosa*, 559 U.S. 260, 268 (2010) ("A discharge under Chapter 13 is broader than the discharge received in any other chapter."). A Chapter 13 debtor must in good faith propose a plan to repay some portion of his or her debts, and Bankruptcy Code § 1328(a) affords a Chapter 13 debtor what has been dubbed a "super discharge." *See, e.g., Barbosa v. Solomon*, 235 F.3d 31, 41 (1st Cir. 2000). Even after the 2005 enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), in which Congress narrowed the super discharge available to a Chapter 13 debtor, Congress expressly excluded debts of the kind set forth in § 523(a)(6) from the nondischarge provisions

listed in § 1328(a). However, Congress did not amend the original 1978 version of § 523(a)(2)(A). *See supra* note 4. Both the majority and the concurring judge in *McClellan* conceded that the debtor's actions in that case – as the Court might find in this case – would probably fall within the scope of § 523(a)(6) which excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." *McClellan*, 217 F.3d at 896 ("For completeness we note that it might also be possible to shoehorn the facts of this case into another provision of section 523, the provision that excludes from discharge debts arising from 'willful and malicious injury by the debtor to another entity or to the property of another entity.' 11 U.S.C. § 523(a)(6)."). *See also Colokathis*, 417 B.R. at 150; *Murray v. Bammer (In re Bammer)*, 131 F.3d 788 (9th Cir. 1997). Because *McClellan* involved a Chapter 7 case, § 523(a)(6) was available to the claimant and, as stated in the concurring opinion, served as an independent ground for nondischarge of the debtor's debt. *McClellan*, 217 F.3d at 896 ("Section 523(a)(6), however, more easily covers our facts because it reaches any debt for willful and malicious injury to another's property. I think it is important to point out that *§ 523(a)(6) provides a far more direct avenue* for dealing with a situation as the one we have before us." (emphasis added)).

To depart from the widely understood common law definition of "actual fraud" under § 523(a)(2)(A) to reach fraudulent conduct in which a misrepresentation is not present would blur the distinction between the broader discharge available under Chapter 13 and the more limited discharge available under Chapter 7 intended by Congress. While that distinction may offend the senses of some and be criticized as unfair when applied to Sauer's debt, the Court is not at liberty to disregard the breadth of the discharge under the Bankruptcy Code extended to a

13

Chapter 13 debtor, nor does the Court have the luxury of disregarding the elements ascribed to the term "actual fraud" under *Field v. Mans* and the First Circuit's *Spigel/Palmacci* test.

## VI. CONCLUSION

Sauer, as it concedes, does not allege that the Debtor made a false representation, and therefore, it cannot satisfy the elements of a nondischargeability claim under § 523(a)(2)(A). The Debtor's motion to dismiss is GRANTED .

Dated: February 3, 2014                    By the Court,

                                            /s/ Diane Finkle  02/03/2014
                                            Diane Finkle
                                            U.S. Bankruptcy Judge